UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Welton E. Beard III, | § § § | |
| *Plaintiff,* | § § | |
| | § | Case No. 4:20-cv-04409 |
| v. | § § | |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | § § § § | |
| *Defendant.* | | |

## MEMORANDUM AND RECOMMENDATIONS

Plaintiff Welton Beard III seeks review of an administrative decision that denied his request for disability benefits. *See* Dkt. 1. The case was referred to the undersigned judge, Dkt. 12, and the parties filed cross-motions for summary judgment, Dkts. 16, 17. After carefully considering the motions, the record, Dkt. 10, and the applicable law, it is recommended that Defendant Kilolo Kijakazi's motion for summary judgment be granted, and that Beard's motion for summary judgment be denied.

## Background

Mr. Beard was a member of the United States Army from 1989 to 1990 and the United States Marine Corps from 1991 to 2004, where he served in both Iraq and Kuwait. R.195; 1015. Following his time in service, he worked

1

as a truck driver, loader, and eventually a driver representative. R.234. In early 2019, Mr. Beard was involved in a car accident that killed another driver. R.35, 289, 767 (accident on Jan. 24, 2019). According to Mr. Beard, the accident compounded his back pain and back spasms, impeding his ability to reach for things and lift objects weighing more than five pounds. R.38. To alleviate his pain, Mr. Beard receives Toradol shots and uses a cane. R.37, 54. In addition to the pain management issues, he also suffers from sleep apnea, cataracts, PTSD, anxiety, and depression. R.13.

Mr. Beard applied for social security benefits on May 31, 2019. *See* R.10. After the Commissioner denied his claim both initially and on reconsideration, R.129, 137, Mr. Beard sought review from an Administrative Law Judge ("ALJ"). R.183. The ALJ held a hearing and issued a decision that denied Mr. Beard's request for benefits. R.10-21; 29-82. This appeal ensued. Dkt. 1.

## **Standard of Review**

This Court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is enough that a reasonable mind would support the conclusion." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). It is "more than a scintilla, but it

need not be a preponderance." *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). "Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the

Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. The ALJ correctly formulated Mr. Beard's RFC.

Although variably couched as challenges to the ALJ's findings at other steps of the analysis, *see, e.g.*, Dkt. 16 at 6, Mr. Beard's first contention in substance disputes the ALJ's formulation of his residual functional capacity ("RFC"). The RFC is a predicate to steps four and five that determines "the most the claimant can do despite [her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez*, 415 F.3d at 461-62). When formulating a claimant's RFC, an ALJ examines the totality of the circumstances surrounding a claimant's impairments. *See* 20 C.F.R. § 404.1545(e).

In this case, the ALJ formulated an RFC concluding that Mr. Beard is capable of performing "light work," as defined in 20 C.F.R. § 404.1567(b), subject to additional restrictions. R.16. According to Mr. Beard, this RFC (1) failed to give sufficient weight to the testimony of Mr. Beard's wife and treating physicians; (2) failed to account for his use of a cane; and (3) failed to incorporate all of Mr. Beard's limitations. Dkt. 16 at 6-22. The Court is not persuaded.

4

### A. The ALJ properly weighed the evidence when assessing Mr. Beard's limitations.

When reviewing a claim for disability benefits, an ALJ must consider all the record evidence. SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). But the ALJ is not required to give special weight to the views of a claimant's spouse or any other source. *See, e.g.*, *Cain v. Barnhart*, 193 F. App'x 357, 362 (5th Cir. 2006) (affirming ALJ's implicit rejection of wife's testimony as "not fully supported by the record"); *Renovato v. Saul*, 2021 WL 966098, at *6 (S.D. Tex. Mar. 15, 2021) (upholding ALJ's decision to discount opinion of consultative examiner). Rather, the ALJ must assess whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." SSR 16-3p, 2017 WL 5180304, at *4.

The Court first rejects Mr. Beard's contention that the ALJ should have factored in his wife's statements. *See* Dkt. 16 at 14-16. Notably, Mr. Beard does not explain how this purported omission led to an incorrect decision. Rather, as the Commissioner correctly observes, Dkt. 18 at 5, Mr. Beard simply lists his wife's responses to a questionnaire and asks the Court to reach its own conclusions. Dkt. 16 at 15-16. Yet a review of the ALJ's decision shows that the ALJ did consider Mrs. Beard's descriptions of her husband's limitations, which track Mr. Beard's own testimony.

For instance, both Mr. and Mrs. Beard discussed his physical pain and its limiting effects. *Compare* R.35-41, 43, 52-54 (Mr. Beard's testimony), *with* R.262-65, 267 (wife's report). The ALJ concluded, however, that these statements about "the intensity, persistence and limiting effects" of Mr. Beard's symptoms "are not entirely consistent with the medical evidence and other evidence in the record ...." R.17. For instance, records from January 2019, after Mr. Beard's car accident, revealed that despite experiencing neck, shoulder, and lower back pain, his range of motion and gait were normal, as were his strength and sensation in his lower extremities. R. 712-16. An x-ray detected no abnormality in his lumbar spine. R.722-23. Later that month, another examination showed "[g]ood range of motion" in Mr. Beard's shoulder without pain pushing against resistance. R.732. Despite exhibiting tenderness and pain, his examining physician found no bony tenderness, deformity, or spasm in the lumbar area. R.732. X-rays taken again in September 2019 again found no acute findings in the lumbar spine. R.1022.

Moreover, Mr. Beard reported improvement after undergoing physical therapy, taking medications, and receiving Toradol injections. *See, e.g.,* R.792-93 (Mar. 20, 2019, "Mobility and locomotion pace increasing, tolerating increasing loads"; Mr. Beard reported "Overall better"); R.815 (Mar. 28, 2019, "significant improvement" after taking "tylenol/ibuprofen at home"; improvement to mobility after nine physical therapy sessions); R.838 (Apr. 3,

6

2019, improved mobility although "very slow with all transitions"); R.1057 (Sept. 30, 2019 record stating that Mr. Beard "felt much better after receiving toradol"); R.1049 (Oct. 2, 2019 record prescribing ibuprofen "as needed for mild pain and inflammation"); R.1052 (same). As the ALJ noted, R.18, Mr. Beard's attempt to lift a heavy object in September 2019 undermined his testimony that he cannot lift more than five pounds. *Compare* R.1058 (Sept. 20, 2019 record stating that "Pt reports heavy lifting"), *with* R.38 (Mr. Beard's testimony).

The same is true of Mr. Beard's mental impairments. The Beards indicated that Mr. Beard had significant difficulty with forgetfulness and being around others. *See* R.43-45 (Mr. Beard's testimony); R.266-68 (wife's report). The ALJ, however, noted that the medical record does not support any "psychotic symptoms, suicidal ideation, or serious deficits in memory or concentration that would preclude" Mr. Beard from performing "detailed work." R.18; *see also*, *e.g.*, R.859 (Apr. 22, 2019 record noted Mr. Beard's linear and logical thought; no hallucinations or suicidal ideations; memory and attention intact); R.871 (May 1, 2019, noting Mr. Beard is "[a]ble to stay focused in conversation"; no suicidal intentions expressed); R.875 (May 31, 2019, denied "self-harming behaviors"); R.884, 887 (June 3, 2019, noting "improved" energy and concentration; no suicidal ideation; continued anti-depressant medications); R.1169 (Apr. 5, 2017 record noting that Mr. Beard's

7

"thought processes were logical, linear, and goal-directed"; no report of "hallucinations, delusions, bizarre thinking or behavior"); R.1223 (Feb. 26, 2018, no report of suicidal ideation during visit with psychologist); R.1230 (Jan. 18, 2018, same). Mr. Beard received "conservative medication management," which has gradually improved his condition. *See, e.g.,* R.1214 (May 24, 2018 report that medication had "appropriate results in minimizing Depressive Disorder symptoms and panic disorder").

The record as a whole thus supports the ALJ's implicit decision to discount Mrs. Beard's description of the severity of Mr. Beard's limitations. And the ALJ was not required to accept Mrs. Beard's characterization of her spouse as "disabled." *See* R.262-69; SSR 96-8p, 1996 WL 374184, *7 n.8 (Jul. 2, 1996) (determining whether a person is "disabled" is reserved to the commissioner).

Mr. Beard's further reliance on opinions by the consultative examiner, Dr. Costa, do not overcome the substantial evidence supporting the ALJ's conclusions. *See* Dkt. 16 at 8-14. To the contrary, the ALJ explained the reasons for discounting Dr. Costa's analysis. *See* R.19. In particular, the ALJ concluded that some of Dr. Costa's observations conflicted with his opinions that Mr. Beard had "anxious mood, depressed mood, poor recent memory, [and] slow processing speed." *Id.* For one, Dr. Costa found Mr. Beard to be "oriented" without confusion and capable of recalling three objects immediately and one

8

after a delay. R.18-19 (referencing R.1016). As also noted by Dr. Costa, Mr. Beard could do simple arithmetic and serial 3 calculations. *Id.* Although the ALJ did not reject Dr. Costa's conclusion that Mr. Beard was depressed, R.19, Dr. Costa found no indication of paranoia, preoccupations, or psychosis, *see* R.1016. Instead, the ALJ agreed with opinions from a state agency psychologist that Mr. Beard has only moderate limitations in his ability to understand, remember, and apply information, to interact socially with others, to concentrate, persist, or maintain pace, and to adapt and management himself in the workplace. R.19 (citing R.104-06; R.123-25). "[T]he ALJ was justified in accepting the ... findings of some over others." *Pineda v. Astrue*, 289 F. App'x 710, 713 (5th Cir. 2008) (per curiam).

In short, the record does not support Mr. Beard's assertion that the ALJ simply picked and chose what evidence to credit. Mr. Beard just disagrees with how the ALJ weighed competing evidence. That was the ALJ's job to perform. *See Perez*, 415 F.3d at 461 ("Conflicts of evidence are for the Commissioner, not the courts, to resolve."). Mr. Beard cannot relitigate the ALJ's findings, which substantial evidence supports.

**B. The ALJ correctly analyzed Mr. Beard's use of a cane.**

For his next issue, Mr. Beard asserts that the ALJ did not properly incorporate his use of a cane when formulating the RFC. Dkt. 16 at 6-8. This contention is flawed.

9

As a threshold matter, the Commissioner correctly questions whether the ALJ was obligated to factor in Mr. Beard's cane use at all. Dkt. 18 at 5. "To find that a hand-held assistive device is medically required, there must be medical documentation *establishing the need* for [the] device to aid in walking or standing, *and* describing *the circumstances for which it is needed* (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (Jul. 2, 1996) (emphasis added).

Consistent with Mr. Beard's testimony, one of his medical records indicates that he was issued a cane. R.54, 374. But nothing in his medical records indicates that Mr. Beard needed to use a cane when ambulating. That evidentiary gap, alone, would justify excluding Mr. Beard's cane use from his RFC. *See Byrd v. Berryhill*, 2018 WL 706468, at *3 (S.D. Tex. Feb. 5, 2018) (affirming a denial of benefits where a claimant who used a cane to ambulate did not demonstrate that it was medically necessary).

But the evidence supports the ALJ's formulation of Mr. Beard's RFC even if his cane-use was necessary. Mr. Beard misplaces reliance on *Bolton v. Callahan*, 984 F. Supp. 510, 515 (N.D. Tex. 1997), when claiming that that cane-use precludes him from performing "light level jobs [that] 'require a good deal of walking or standing' ...." Dkt. 16 at 6.

At most, the *Bolton* decision suggested that a claimant could not perform the full range of "light work" when he was unable to stand for more than 15 minutes in a 45-minute period and had to sit for six hours each workday. *See* 984 F. Supp. at 515. But other decisions—including from the Fifth Circuit—make clear that cane use does not categorically preclude a claimant from performing light work. *See, e.g., Britton v. Saul*, 827 F. App'x 426, 429 (5th Cir. 2020); *Mosely v. Kijakazi*, 2022 WL 3093294, at *2 (N.D. Miss. Aug. 3, 2022) (finding that there was no categorical erosion of jobs in the light work category for a person who required use of a cane). In *Britton*, for example, the court upheld the ALJ's determination that a claimant was capable of light work based on medical evidence, medical opinions, and the testimony of a vocational expert. *Id.* at 429-30.

In this case, the ALJ questioned Mr. Beard about his cane use, R.36, 54-55, accounted for that use when crafting Mr. Beard's restrictions, R.16, and included those additional restrictions when asking the vocational expert what work a similarly-situated claimant could perform, R.71-75. The vocational expert responded that an individual using a cane could still perform some types of light work. R.71-72 (eliminating position as a garment sorter but opining that other light work was still feasible); *see also* R.74-75 (explaining that person with cane could work as an office helper and lift up to 20 pounds occasionally). In fact, Mr. Beard expressly acknowledges the vocational

11

expert's opinion. *See* Dkt. 16 at 8 (recognizing that the vocational expert opined that Mr. Beard could perform light work—with the additional restrictions imposed—while still using his cane). And as discussed above, other evidence supports the ALJ's determination that Mr. Beard is capable of doing more than he asserts. *See supra* Part II.A. Substantial evidence thus supports the ALJ's conclusions.

Mr. Beard's interrelated contention that the vocational expert did not provide sufficient analysis also fails. *See id.* Vocational experts do not have to explain the bases for their opinions in every case. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (holding that a vocational expert need only disclose the underlying data supporting his conclusion on a case-by-case basis). Here, the vocational expert testified that Mr. Beard could perform a number of light-work occupations while using a cane. *See* R.71 (distinguishing jobs that would be affected by cane use at the medium exertional level), 75 (explaining that the office helper position is a light work job that can be performed with a cane). Having failed to challenge the expert's conclusions then, Mr. Beard cannot claim they conflict with any job descriptions now. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present

that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing").

In short, the mere fact that the words "cane use" do not appear explicitly in the RFC provides no grounds for reversal. "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Given both the medical evidence and the vocational expert's unchallenged opinions, Mr. Beard has not shown that any claimed failure to account for his cane-use impacted the ALJ's conclusion that he is not disabled. The Court should reject Mr. Beard's arguments on these points.

### C. Isolated hypotheticals do not override substantial evidence supporting the ALJ's RFC determination.

As his final contention, Mr. Beard asserts that the ALJ failed to account for the vocational expert's answers to two specific hypotheticals. *See* Dkt. 16 at 18-22. Those hypotheticals injected limitations that the ALJ ultimately declined to adopt, based on the record evidence. *Compare* R.72 (questions assumed that a claimant "would have good days and bad days" resulting in absences twice or more each month, or that he "would likely ... be off task 20 percent or more of the workday"), *with* R.16-19 (detailing medical evidence that refutes Mr. Beard's statements about the intensity, persistence, and limiting effects of his contentions).

13

Mr. Beard's contention is the opposite of the authorities he invokes. Dkt. 16 at 21. Under *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001), a hypothetical is flawed if it does not "incorporate reasonably all disabilities recognized by the ALJ ...." (internal quotation marks omitted). Yet here, the cited hypotheticals *included* claimed limitations that the ALJ ultimately found were *unsupported*. Nothing required the ALJ to accept a vocational expert's answer to a hypothetical question that presumed such unsupported limitations. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."); *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) (upholding the ALJ's rejection of expert's answer to a hypothetical that was "composed of assumptions subsequently found unsupported by medical evidence") (footnote omitted). The ALJ's decision should be affirmed.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Defendant Commissioner of Social Security's motion for summary judgment (Dkt. 17), **DENY** Plaintiff Welton Beard's motion for summary judgment (Dkt. 16), and **AFFIRM** Defendant's denial of social security benefits.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 22, 2022, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge